# No. 25-50693

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Wendy Davis; David Gins; Timothy Holloway,

Plaintiffs - Appellees

United States of America,

Intervenor - Appellee

v.

Eliazar Cisneros,

Defendant - Appellant

## On Appeal from
United States District Court for the Western District of Texas

1:21-CV-565

## BRIEF OF APPELLANT ELIAZAR CISNEROS

SUBMITTED BY:

Francisco Raul Canseco
Attorney at Law
Tx Bar No. 03759600
19 Jackson Court
San Antonio, Tx 78230
210.901.4279
frcanseco@gmail.com
Attorney for Eliazar Cisneros

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Wendy Davis | Samuel Hall of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| David Gins | Robert Meyer of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| Timothy Holloway | Zachary Dolling of Texas Civil Rights Project Austin, TX |
| | Sarah Chen of Texas Civil Rights Project Austin, TX |
| | Aaron Nathan of Willkie Farr & Gallagher, L.L.P. New York, NY |
| | JoAnna Suriani of Protect Democracy Project, Incorporated Washington, DC |
| | Benjamin Berwick of Protect Democracy Project, Incorporated Watertown, MA |
| | Nina Oishi of Texas Civil Rights Project Austin, TX |
| | Samuel Hall of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| | Robert Meyer of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| | Zachary Dolling of Texas Civil Rights Project Austin, TX |
| | Sarah Chen of Texas Civil Rights Project Austin, TX |
| | Aaron Nathan of Willkie Farr & Gallagher, L.L.P. New York, NY |

| | |
|---|---|
| | JoAnna Suriani of Protect Democracy Project, Incorporated Washington, DC |
| | Benjamin Berwick of Protect Democracy Project, Incorporated Watertown, MA |
| | Nina Oishi of Texas Civil Rights Project Austin, TX |
| | Samuel Hall of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| | Robert Meyer of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| | Zachary Dolling of Texas Civil Rights Project Austin, TX |
| | Sarah Chen of Texas Civil Rights Project Austin, TX |
| | Aaron Nathan of Willkie Farr & Gallagher, L.L.P. New York, NY |
| | JoAnna Suriani of Protect Democracy Project, Incorporated Washington, DC |
| | Benjamin Berwick of Protect Democracy Project, Incorporated Watertown, MA |
| | Nina Oishi of Texas Civil Rights Project Austin, TX |
| United States of America | Ashley Honold of U.S. Department of Justice Washington, DC |

| Appellants: | Counsel for Appellants: |
|---|---|
| Eliazar Cisneros | Francisco Raul Canseco San Antonio, TX |

S/*Francisco Raul Canseco*
Attorney of record for Eliazar
Cisneros

iv

# STATEMENT REGARDING ORAL ARGUMENT

Defendant Cisneros requests oral argument. The District Court interpreted the Ku Klux Klan Act of 1871 ("the Act") in a manner rejected by other courts since the Act's inception approximately 150 years ago. 42 U.S.C. § 1985(3). The District Court's error must be corrected Plaintiffs' Ku Klux Klan claims against Defendants requires reversal. It was the only basis for providing federal court jurisdiction, and the only basis of a jury finding of liability against Defendant Cisneros the case below should be reversed.

The District Court's orders below advanced an unsound, use of the Act that will have wide-sweeping negative consequences. It threatens First Amendment rights and weaponizes the Act, morphing it into a general tort claim to hurl at political foes.

Oral argument is likely to assist the Court in its resolution of this serious matter.

# TABLE OF CONTENTS

Contents                                                                                      Page(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ..................................................v

TABLE OF CONTENTS .........................................................................................vi

TABLE OF AUTHORITIES.....................................................................................1

JURISDICTIONAL STATEMENT...........................................................................4

STATEMENT OF THE ISSUES ...............................................................................5

STATEMENT OF THE CASE ..................................................................................5

SUMMARY OF THE ARGUMENT..........................................................................5

ARGUMENT .............................................................................................................6

CONCLUSION .......................................................................................................20

CERTIFICATE OF SERVICE................................................................................22

CERTIFICATE OF COMPLIANCE .......................................................................24

# TABLE OF AUTHORITIES

**Cases**………………………………………………………………**Pages(s)**

*Andrade v. Stewart*, 2022 U.S. Dist. LEXIS 42776, *Newsome v. EEOC*, 301 F.3d 227.................................................................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ......................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). ....................................................11

*Bray v. Alexandria Women s Health Clinic,* 506 U.S. 263, 267-68, 122 L. Ed. 2d 34, 113 S. Ct. 753 (1993)..................................................................13

*Bray*. 506 U.S. 263, 267-68, 278 (1993) ................................................................12

*Brentwood Acad. v.Tenn. Secondary Sch. Athletic Ass n*, 531 U.S.288, 295-96 (2001)......................................................................................15

*Brooks v. Nacrelli*, 473 F.2d 955 (3d Cir. 1973)......................................................14

*Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000)...................................11

*Bryan*, 213 F.3d at 276 ...........................................................................................18

*Carpenters* .........................................................................................7, 11, 18

*Carpenters*, 463 U.S. at 837.............................................................................18, 19

*Cook v. Randolph County,* 573 F.3d 1143, 2009 U.S. App. LEXIS 15201 (11th Cir. 2009) (discussing change of voting district). .....................................14

*Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757–58 (5th Cir. 1987)................11

*Deubert*, 820 F.2d at 757–58................................................................................18

*Federer*, 363 F.3d at 759- 60...............................................................................14

*Gerber v.Herskovitz*, 14 F.4th 500, 511 (6th Cir. Sept. 15, 2021); .........................13

*Gill v. Farm Bureau Life Ins. Co*...............................................................................7

*Gill*, 906 F.2d 1265; *Paynes v. Lee*, 377 F.2d 61 (5th Cir.1967) ...........................14

*Gill*, 906 F.2dat 1270...........................................................................................14

*Graham v. Clusen*, 427 F. Supp. 820, 821 (D.D.C. Feb. 24, 1977) .......................15

*Grambling Univ. Nat'l Alumni Ass'n v.Bd. of Supervisors for the La. Sys. .286 F. App'x 864,871 (5th Cir. 2008).................................................................12

*Gray v. Darien*, 927 F.2d 69 (2d Cir. 1991), cert. denied, 502U.S. 856, 112 S. Ct. 170 (1991 ...................................................................................14

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 834–37 (1983)...........................................................10

*Griffin v. Breckenridge,* 403 U.S. 88, 104 (1971). .................................................16

*Griffin*, 403 U.S. at 102, and *Carpenters*, 463 U.S. at833) ...................................13

*Griffin*, 403 U.S. at 102. ......................................................................................19

1

*Griffin, Bray, and Carpenters*. See, e.g., Bray, 506 U.S. at 275. ............................17

*Griffin's* .................................................................................................................18

*Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985) ...................................................14

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir....................11

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir.
   2001); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757–58 (5th Cir.
   1987); *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v.*
   *E. Tex. State Univ.*, 161 F.3d 276, 281 (5th Cir. 1998) ......................................11

*Horaist*, 255 F.3d at 270.........................................................................................18

*Howard v. State Dep't of Highways*, 478 F.2d 581, 585 (10th Cir. 1973)..............12

*Howard v. State Dep't of Highways*, 478 F.2d 581, 585 (10th Cir. 1973)
   *Grambling Univ. Nat'l Alumni Ass'n v.Bd. of Supervisors for the La. Sys.* .286 F.
   App'x 864,871 (5th Cir. 2008)............................................................................12

*Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 345 46 (5th Cir. 1981)....................17

*Kush v. Rutledge*, 460 U.S. 719, 724 (1983))........................................................14

*Kush*, 460 U.S. at 726, or 2) ..................................................................................14

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982).......................................11

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938-39 (1982)..................................13

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938-39 (1982); *Gerber v.Herskovitz*,
   14 F.4th 500, 511 (6th Cir. Sept. 15, 2021); *Gill*, 906 F.2d1265; *Federer v.*
   *Gephardt*, 363 F.3d 754 (8th Cir. 2004) ............................................................13

*Martin v. Halliburton,* 618 F.3d 476 (5th Cir. 2010) ...............................................3

*McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 932 (5th Cir. 1977) (en
   banc)....................................................................................................................17

*Mohawk Indus. v. Carpenter,* 558 U.S. 100, 130 S. Ct. 599 (2009.........................3

*Montano*, 120 F.3d at 848 .......................................................................................13

*MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). ...............................................11

*Newberry v. E. Tex. State Univ.*, 161 F.3d276, 281 n. 2 (5th Cir.1998) ................17

*Newberry*, 161 F.3d at 281 .....................................................................................18

*Paynes v. Lee*, 377 F.2d 61, 63–64 (5th Cir. 1967)................................................18

*Paynes. V. Lee* ........................................................................................................15

*Prescott v. Denton Cnty. Jail, 2025 U.S. Dist.* LEXIS 53923, *Andrade v. Stewart,*
   2022 U.S. Dist. LEXIS 42776, *Cunningham v. Panola Coun*ty, 2011 U.S. Dist.
   LEXIS 57850. .....................................................................................................16

*United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 834–37 (1983).......................10

**STATUTES**

28 U.S.C. § 1291 ....................................................................................................3

42 U.S.C. § 1985(3)..............................................................................4, 6, 11, 12

42 U.S.C.§ 1985(3)....................................................................................6, 7, 10

**RULES**

FRCP 12(b),.........................................................................................................6

FRCP 50(a)(b)(2,3), 53(b), 59(a)(e),60(a)(b4,6) ...............................................8

USCS Fed Rules Civ Proc R 54 ..........................................................................3

USCS Fed Rules Civ Proc R 54. .........................................................................3

# JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. The statute provides that courts of appeals have jurisdiction of appeals from all final decisions of the district courts of the United States, except where a direct review may be had in the Supreme Court 28 USCS § 1291.

For purposes of 28 U.S.C. § 1291, a final judgment is normally deemed not to have occurred until there has been a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment *Martin v. Halliburton,* 618 F.3d 476 (5th Cir. 2010). A final decision is typically one by which a district court disassociates itself from a case *Mohawk Indus. v. Carpenter,* 558 U.S. 100, 130 S. Ct. 599 (2009

The District Court's decision constitutes a final decision under 28 U.S.C. § 1291 because it ended the litigation on the merits and left nothing for the court to do but execute the judgment. When an action presents multiple parties, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay USCS Fed Rules Civ Proc R 54. Otherwise, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action and may be revised at any time before entry of judgment adjudicating all claims and parties' rights and liabilities USCS Fed Rules Civ Proc R 54.

This appeal is taken from a final judgment that resolved all claims against all parties, providing this Court with proper appellate jurisdiction. USCS Fed Rules App Proc R 28.

4

## STATEMENT OF THE ISSUES

1. Whether 42 U.S.C. § 1985(3) requires allegations of race-based or otherwise class-based discriminatory animus.

2. Whether a 42 U.S.C. § 1985(3) claim premised on alleged interference with political speech and advocacy requires state action.

## STATEMENT OF THE CASE

This case comes before the Court on appeal from the final judgment of the United States District Court in Cause No. 1:21-CV-00565-RP after a jury verdict found that the Plaintiffs proved by a preponderance of the evidence their claim that one or more Defendants engaged in a conspiracy in violation of 42 U.S.C. § 1985(3).

The District Court's decision over objections from counsel that the use of and claim to the use of 42 U.S.C. § 1985(3) adversely affected Defendant-Appellant Eliazar Cisneros, necessitating this appeal to vindicate his rights under applicable law.

## SUMMARY OF THE ARGUMENT

As with all Congressionally passed laws protecting Civil Rights and those espoused by the 14th Amendment to the U.S. Constitution, 42 U.S.C. § 1985(3) has a requirement of race-based animus – protected class animus, that must be pled and

proved in order to invoke the other requirements of § 1985(3) to impose liability on the Defendant Cisneros.

## ARGUMENT
### History Of The Case

This case arises out of events during the last days of the 2020 Presidential Campaign, where supporters of President Trump and supporters of Presidential Candidate Biden met on the national highways in the state of Texas. The Plaintiffs, Appellees, Davis, Gins, and Holloway were, respectively, a surrogate, a staffer, and a contractor for the Biden-Harris Presidential Campaign. Defendant Cisneros, along with the other five defendants, and many others participated in an advocacy and support demonstration they called the Trump Train.

On October 30, 2020, the Biden-Harris campaign's three-day "Soul of the Nation" bus tour across Texas arrived from Laredo, in San Antonio. The bus, wrapped in campaign slogans including "Battle for the Soul of the Nation," had traveled from Fort Worth/Dallas to Houston, then south to Brownsville and the Rio Grande Valley, through Laredo, then along US Highway 35 north toward Austin.

Trump supporters followed the bus along public roads and gathered at various stops. (ROA. 29062-29063). Social media posts circulated about "Trump Train" supporters attempting to follow the bus.

Plaintiffs' Complaint alleges that large crowds of Trump supporters appeared at stops in Houston and Corpus Christi, some driving decorated vehicles with political messages. Plaintiffs also allege that supporters posted updates about the bus's location along I-35 so others could join.

6

On October 30, Plaintiffs Holloway and Gins departed Laredo. Plaintiff Wendy Davis joined the bus in San Antonio. The bus then left the AT&T Center and traveled north on I-35 toward Austin. Plaintiffs allege that Trump Train vehicles surrounded the bus on the highway, drove closely on multiple sides, braked suddenly, and engaged in aggressive conduct. Plaintiffs further allege a collision occurred between a black truck driven by Defendant Eliazar Cisneros and a white sedan driven by an unidentified campaign staffer and assert that Cisneros instigated the crash. Defendant Cisneros disputes this account; video evidence of the incident was submitted as ROA.12794-12811, Lerma Deposition and' Trial video Exhibit 33014-33056.

Plaintiffs claim the San Antonio–to–Austin drive took nearly 2.5 hours instead of the "normal" ninety minutes. However, their complaint acknowledges bumper-to-bumper traffic near New Braunfels unrelated to Defendants' actions. Plaintiffs attribute the delay to Defendants' conduct. ROAS.112-173. Upon arrival in Austin, the campaign allegedly canceled its remaining events.

Plaintiffs filed suit on June 24, 2021. Their sole federal claim alleges a conspiracy under 42 U.S.C. § 1985(3) (the "Ku Klux Klan Act"), specifically under the statute's "support or advocacy" clause. Plaintiffs do not allege interference with voting or voter registration. Instead, they contend Defendants conspired to deter political advocacy and assembly, violating First Amendment rights. Plaintiffs also assert state-law claims for civil conspiracy and civil assault.

Defendants moved to dismiss under FRCP 12(b), arguing (1) 42 U.S.C.§ 1985(3) requires allegations of race-based animus under Fifth Circuit precedent, and (2) claims based on interference with First Amendment rights require state action, which is absent here. Defendants further argued that if the federal claim were

dismissed, the court should decline supplemental jurisdiction over the state-law claims.ROA.284-296,324-345,791-793.

On March 23, 2022, the district court denied the motions. The court acknowledged that neither the Supreme Court nor the Fifth Circuit has squarely addressed whether the second clause of 42 U.S.C.§ 1985(3) requires race-based animus. Relying in part on *Gill v. Farm Bureau Life Ins. Co.*, the court concluded that racial animus need not be pled. The court also rejected the state-action argument, reasoning that 42 U.S.C.§ 1985(3) can reach private conspiracies.

Defendants sought reconsideration or certification for interlocutory appeal, arguing the court failed to distinguish between cases involving interference with actual voting (which may not require state action) and those involving interference with speech or advocacy (which Supreme Court precedent suggests do require state action, particularly under *Carpenters*). The district court denied reconsideration and refused certification.

Plaintiffs later filed an amended complaint adding defendants. Defendants again moved to dismiss, reiterating that the claim fails absent racial animus and that advocacy-based 42 U.S.C. § 1985 (3) claims require state action. They warned that expanding 42 U.S.C.§ 1985(3) to cover private interference with political speech would improperly federalize ordinary political disputes—precisely what *Carpenters* cautioned against.

On August 3, 2023, the district court again denied dismissal and refused to certify an interlocutory appeal, without addressing the distinction between voting-interference cases and advocacy-based claims or explaining how the Carpenters' state-action requirement does not apply.

A jury was empaneled, and a trial was held in Austin, Texas, on September 9, 2024. On September 23, 2024, after the parties rested, the jury was given a Verdict Form with 8 Questions.ROA.26941-26946. That same day, the jury returned its verdict. ROA.26941-26946. All of the Defendants, except for Defendant Eliazar Cisneros, were found not liable on all of the 8 Questions. Cisneros was found Liable under Question No. 1. By "a preponderance of the evidence … that one or more Defendants engaged in a conspiracy in violation of 42 U.S.C. Section 1985(3)." The jury, as to all Defendants, answered "No" to Question No. 2, civil conspiracy (Texas State Law Claim). On Questions 4 and 5, the jury awarded Plaintiff Timothy Holloway $10,000 in compensatory damages and $30,000 in punitive damages against Defendant Cisneros.

Defendant Cisneros, pursuant to the courts order ROA.26949-26950. filed his motion for Judgment on partial Jury Findings Or For a New Trial under FRCP 50(a)(b)(2,3), 53(b), 59(a)(e),60(a)(b4,6) challenging the jury's finding of conspiracy against Cisneros under jury Question No. 1 versus answer to jury Question No. 2.

Additionally, and one day (at most) after the court order for Defendant Cisneros' Motion ROA.26949-26950., Defendant Cisneros filed a Supplement to his Motion for Judgment on Partial Jury Finding or for a New Trial. This Supplement ROA.26970-26973 challenged the use by Plaintiffs of statements made by Cisneros after the October 30, 2020, incident as evidence of a conspiracy. Additionally, the Supplement challenges the use by the Plaintiffs, over Defendants' objections, of the Deposition of a non-party deponent, one Jason Pena Ahyoun, who claimed throughout the Deposition his 5thAmendment Rights, even though this non-party witness was subpoenaed and available to testify. The deposition testimony was thus

9

used to infer a conspiracy between Defendant Cisneros and the non-party Jason Pena Ahyoun.

The court, in its August 1, 2025 Order ROA.27322-27340, struck the supplement. The court also addresses in its Order, ROA.27341-27343, Defendant Cisneros's conduct in relation to the proceedings.

Defendant Cisneros was active with the Bexar County Trump Train and the New Braunfels Trump Train. Cisneros stated that before October 30, he and a friend, non-party Jason Pena Ahuyon, talked about a "plan to welcome the Biden-Harris campaign to Texas so to speak" by organizing a "convoy," and spreading the word to other Trump Train groups, including the New Braunfels Trump Train ROA.29191. Plaintiffs allege that Defendant Cisneros with Jason Pena Ahuyon planned to "Block the Bus" which allegation, Defendant Cisneros denies that it was NOT the plan. The evidence shows that Jason Pena Ahuyon never testified to this matter, (though subpoenaed and present-available to be called at trial, over objection of Defendant Cisneros, Plaintiffs read into the record his deposition testimony where he pled the   5th Amendment). or any other matter and Defendant Cisneros vehemently denounced such a plan.

All defendants admitted participating in the "Trump Train" incident on October 30, 2020, but deny that the "Trump Train" was intended to intimidate or engage in threatening behavior.

Defendants instead argue that they were engaging in a peaceful protest in support of their chosen candidate for President, Donald Trump. (see ROA.15901-15923, 15933-34, at 4). Defendant Cisneros specifically denies that he drove his car into the campaign staffer accompanying the Bus—arguing instead that the staffer hit

him—and asserts that it was Holloway, as the Bus's driver, who was driving in a tortious manner. ROA.15933-15934, 29010-29276.

Cisneros communicated with non-party Jason Pena Ahuyon when they first learned of the bus planned tour and campaign stops in Texas at least a few days before October 30th, 2020, while Cisneros was at Pena Ahuyon's home. ROA.18793-18799. There were many other Trump Train Planners, including witness Eduardo Nino, leader of the Trump Train, (ROA.29010-29454).

Defendants Cisneros and Pena-Ahuyon agreed to contact others and spread the word about the plan. ROA.29205.

Defendant Cisneros participation in the Trump Train on October 30, 2020, consisted of messages to and from Edward Nino (ROA.29238-29239). Cisneros reiterates that his plan was to follow the bus. Not finding the bus, he goes to the AT&T Center, and there finds the Bus. (ROA.29242). Then Defendant Cisneros proceeds to New Braunfels to meet the Trump Train. (ROA.29248). with some 20-30 cars following the bus. And many more are waiting in New Braunfels. While traveling through New Braunfels, Defendant Cisneros is involved in an auto accident when a white car attempts to enter his lane from the left. *See* Video (ROA.29250-682648, Exhibit s 38, 39, 26, 394). After the incident with the white car, Defendant Cisneros proceeded to Austin to query the driver about insurance.

## SUMMARY OF THE ARGUMENT

This case presents a straightforward question: May 42 U.S.C.§ 1985(3) be used to federalize a partisan political dispute between private citizens? Was the creation of 42 U.S.C.§ 1985(3) meant to create a federal tort?

Supreme Court and Fifth Circuit precedent answer no.

11

First, 42 U.S.C. § 1985(3) requires race-based or comparable class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 834–37 (1983). The Fifth Circuit has repeatedly enforced that limitation and rejected efforts to expand the statute to political groups. See *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757–58 (5th Cir. 1987); *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 (5th Cir. 1998). Plaintiffs allege only partisan hostility. That is legally insufficient.

Second, Plaintiffs' theory rests entirely on alleged interference with First Amendment speech and advocacy. The First Amendment restrains government, not private citizens. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982).

In *Carpenters*, the Supreme Court warned specifically against converting 42 U.S.C. § 1985(3) into a vehicle for federal suits over "the heckling of [a] rival's speakers" or "disruption of the rival's meetings." 463 U.S. at 836. That is precisely what Plaintiffs seek to do here.

The district court's ruling disregards controlling precedent and expands 42 U.S.C. § 1985(3) beyond constitutional limits. The complaint should have been dismissed and the issue should not have gone to a jury.

---

**STANDARD OF REVIEW**

This Court reviews de novo the denial of a Rule 12(b)(6) motions denied by the District Court that were consequential to the Defendant Cisneros during the trial and the jury verdict. *MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). *Doe v.* Legal conclusions are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S.

12

662, 678–79 (2009). Questions of statutory interpretation and required legal elements are reviewed de novo.

---

**ARGUMENT**

---

a.    **The Act Does Not Create a Private Tort for a Deprivation of Election – related Speech -Without Alleging State Action.**

The District Court held that the 42 U.S.C. § 1985(3), the "Act" supported a cause of action for the deprivation of First Amendment rights (the loss of campaign-related speech) without requiring that Plaintiffs plead that their alleged conspiracy involved state action. This is a fatal blow to federal claim, and the District Court fails to adequately address it. App. at 55-68, 69-75, 76-77, and 78-86.

The pertinent section of the Act states,

42 U.S.C. § 1985(3).

> [I]f two or more persons conspire to prevent by force intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; . . . or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation.

The Act only protects the depravation of a "right or privilege of citizen "of the United Sates".; *Howard v. State Dep't of Highways*, 478 F.2d 581, 585 (10th Cir. 1973) *Grambling Univ. Nat'l Alumni Ass'n v.Bd. of Supervisors for the La. Sys.* .286 F. App'x 864,871 (5th Cir. 2008)

13

The District Court, however, interpreted the Act to create a new right: a private cause of action for infringements upon "election related "speech. A similar argument was expressly rejected by the Supreme Court in *Bray*. 506 U.S. 263, 267-68, 278 (1993) (holding that the deprivation of the right to inter-state travel and abortion "cannot be the object of a purely private conspiracy." (applying *Carpenters*, 463 U.S. at 833 and holding "Respondents' §1985(3)  depravation claim must fail, then, because they have identified no right protected against private action that has been the object of the alleged conspiracy,"); see also *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938-39 (1982); *Gerber v.Herskovitz*, 14 F.4th 500, 511 (6th Cir. Sept. 15, 2021); *Gill*, 906 F.2d1265; *Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004).For example, in *Federer*, the plaintiff brought a claim of action against his democratic party opponent and several of his opponent's supporters alleging that they broke into his home, showed up at a parade he was marching in and assaulted him, and otherwise prevented him from engaging in "support or advocacy under the Act.  363 F.3d at 757. The *Federer* court stated,

> ""For a private conspiracy to come within the ambit of the first clause of §1985(3), the plaintiff must also establish. (1) "That some racial or perhaps otherwise class based, invidiously discriminatory animus. [lay] behind the conspirator's actions" and (2) "That the conspiracy aimed at interfering with the rights that are protected against private, as well as official encroachment." *Bray v. Alexandria Women s Health Clinic,* 506 U.S. 263, 267-68, 122 L. Ed. 2d 34, 113 S. Ct. 753 (1993) (quoting *Griffin*, 403 U.S. at 102, and *Carpenters*, 463 U.S. at833). Passing the question of whether or not a political party is a "class" under the statute *Carpenters*, 463 U.S. at836, it is clear that the "rights" involved here are solely First Amendment. Rights. As such, they are not rights that are "protected against both private and official

14

encroachment." the First Amendment "erect a shield exclusively against governmental misconduct. It provides no protection against private behavior, no matter how egregious." *Montano*, 120 F.3d at 848 (internal citation omitted). Thus, § 1985(3) provides no remedy for a private conspiracy based on a violation of *Federer's* First Amendment rights. "

Federer, 363 F.3d at 759-760 (quoting *Montano v. Hedgepeth*, 120 F.3d.844 (8th Cir. July 23, 1997)) (emphasis added). The Eighth Circuit Explained that "the second part of § 1985. [3 ] relates generally to the institutions and processes of the federal government." and specifically to federal elections." *id*. (quoting *Kush v. Rutledge*, 460 U.S. 719, 724 (1983)); see also *Gill*, 906 F.2d 1265; *Paynes v. Lee*, 377 F.2d 61 (5th Cir.1967) (protecting the right to be free from voter intimidation when registering to vote); *Brooks v. Nacrelli*, 473 F.2d 955 (3d Cir. 1973)(discussing interference with voting at a designated polling location during the election); *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985)(holding that § 1985(3) does not provide a cause of action for politically motivated conspiracy among private parties to mislead voters in primary election); *Gray v. Darien*, 927 F.2d 69 (2d Cir. 1991), cert. denied, 502U.S. 856, 112 S. Ct. 170 (1991) (discussing restrictions on polling places and voting hours); *Cook v. Randolph County,* 573 F.3d 1143, 2009 U.S. App. LEXIS 15201 (11th Cir. 2009) (discussing change of voting district).

Then in order to allege a private conspiracy under the "support or advocacy" clause, Plaintiffs must either 1) allege interference or intimidation involving an official government process directly related to "federal officers, federal courts, or federal elections, *"Kush*, 460 U.S. at 726, or 2) allege interference with advocacy during a campaign when accompanied by the involvement of state action in the conspiracy. *Federer*, 363 F.3d at 759- 60 (because the substantive federal right that

15

*Federer* wishes to vindicate is a First Amendment right, state action is required.");
see also   *Gill*, 906 F.2dat 1270 (" the essence of plaintiff's claim is the assertion of
a First Amendment type right vindicating advocacy and association," and holding
that " a First Amendment claim cannot be actionable in the absence of State
Action.")

Plaintiffs as private actors cannot be liable for First Amendment violations
absent the involvement of state action. State Action is "such a close nexus between
the State and the challenged action" that seemingly private behavior may be fairly
treated as that of the state itself". *Brentwood Acad. v.Tenn. Secondary Sch. Athletic
Ass n*, 531 U.S.288, 295-96 (2001). The District Court never attempted to link the
allegations against Defendant Cisneros to state action. And the Act does not, and
has never, provided a private cause of action for a deprivation of First Amendment
rights (i.e., campaign speech) without a showing of state action. Therefore, the
District Court has clearly erred.

**b. The Act Does Not Create a Private Tort to Punish Deprivations of the Right
to Political Speech;**

The District Court conflates speech for the purpose of "election advocacy"
with voting. The District Court never explains why. 1st Amendment speech should
be treated the same as voting activity under the Act. The Act provides a cause of
action when a defendant prevents a plaintiff from exercising his / her voting rights,
but not for broad spectrum claims pertaining to generalized election advocacy.
*Graham v. Clusen*, 427 F. Supp. 820, 821 (D.D.C. Feb. 24, 1977) (holding that
while Congress had an interest in protecting an informed vote when passing §
1985(3) and stating that "Voter from exercising that right. In this courts view, these

16

words clearly indicate that Congress intended that a more narrowly focused conspiracy and a more nearly total deprivation have existed.")

The District Court relies on *Paynes. V. Lee* for the proposition that the Act is broad enough to include "election advocacy". In *Paynes*, this court held. that the plaintiff had a claim under the Act when two white men motivated by racial animus, came to his house, and threatened to "destroy or annihilate" him if he registered to vote. 377 F.2d at 63. The case involved registering to vote in a federal election. It never extended the Act to First Amendment activity like "election advocacy", cited by the District Court are similarly inapplicable. The District Court failed to provide any legal basis for treating the deprivation of First Amendment rights the same as a claim challenging the regulation of voting in a federal election under the Act.

**The Act Requires a Showing of Racial Animus if a Plaintiff Seeks Damages for a Deprivation of Rights Without Alleging a State Action Conspiracy.**

A claim under the Act, brought against a private citizen, without alleging state involvement in the conspiracy, requires Plaintiffs plausibly allege and prove racial animus. The Supreme Court has regarded this requirement as being an essential limitation on the Act: The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. *Griffin v. Breckenridge,* 403 U.S. 88, 104 (1971).

If the plaintiffs had already voted prior to the alleged conduct or voted in another state, the focus would shift to whether the defendants' actions deprived the

plaintiffs of other rights protected under § 1985(3), such as equal protection of the laws or privileges and immunities. To state a claim, the plaintiffs must also demonstrate that the conspiracy was motivated by racial or class-based discriminatory animus, as this is a requirement for claims under § 1985(3) in the Fifth Circuit . *Prescott v. Denton Cnty. Jail, 2025 U.S. Dist.* LEXIS 53923, *Andrade v. Stewart,* 2022 U.S. Dist. LEXIS 42776, *Cunningham v. Panola Coun*ty, 2011 U.S. Dist. LEXIS 57850. Without such animus, the claim would fail even if other elements of the statute were met . *Andrade v. Stewart*, 2022 U.S. Dist. LEXIS 42776, *Newsome v. EEOC*, 301 F.3d 227.

The 5th Circuit has required plaintiffs to plead racial animus. *Kimble v. D. J. McDuffy, Inc*., 648 F.2d 340, 345 46 (5th Cir. 1981) (requiring the showing of racial animus to allege a claim under 42 U.S.C.§ 1985(2) based upon the finding that it is required under § 1985(3)). This Circuit also has required plaintiffs to plead racial animus. *Kimble v. D. J. McDuffy, Inc.,* 648 F.2d 340, 345 46 (5th Cir. 1981)(requiring the showing of racial animus to allege a claim under 42 U.S.C. §1985(2) based upon the finding that it is required under § 1985(3)). This Court explained that the Act "was passed amid the lawless conditions existing in the South after the Civil War. *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 932 (5th Cir. 1977) (en banc). It further explained,

> "It is readily apparent from the Title of the bill itself. "An Act to enforce the Provisions of the Fourteenth the key concern of the legislators was to put force behind the Civil War Amendments by providing an avenue for the redress of injuries suffered by the class of newly emancipated slaves. Nowhere have we seen it suggested that Congress was concerned about discrimination being practiced against insolvents."

18

Id. (footnotes omitted); see also *Newberry v. E. Tex. State Univ.*, 161 F.3d276, 281 n. 2 (5th Cir.1998) (noting that the Supreme Court has never held that non-racial animus is sufficient). Supreme Court and Fifth Circuit precedent provide that a claim brought under the Act cannot survive were not motivated by racial animus. Yet, the District Court held that this requirement was not necessary. This was clear legal error that conflicts with the holdings of this Court and the holdings of the Supreme Court in *Griffin, Bray, and Carpenters*. See, e.g., Bray, 506 U.S. at 275. 42 U.S.C. §1985(3) is not a general remedy for politically motivated disputes. The Supreme Court has said so repeatedly.  In *Griffin*, the Court held that a 42 U.S.C. § 1985(3) plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102. That requirement was not incidental. It was necessary to avoid transforming the statute into a sweeping federal tort law.

In *Carpenters*, the Court reaffirmed the limitation and rejected efforts to extend 42 U.S.C. § 1985(3) to conspiracies motivated by economic or political bias. 463 U.S. at 834–37. The Court emphasized that expanding the statute beyond its historical focus would convert it into a general federal vehicle for private political grievances. Id. at 835.

This Court has faithfully applied that constraint. See:

- *Horaist*, 255 F.3d at 270 (affirming dismissal absent class-based animus);
- *Deubert*, 820 F.2d at 757–58 (same);
- *Bryan*, 213 F.3d at 276 (requiring discriminatory animus);
- *Newberry*, 161 F.3d at 281 (rejecting § 1985(3) claim lacking protected class).

19

Political affiliation is not a protected class under § 1985(3). *Carpenters*, 463 U.S. at 837. Allegations of partisan hostility—even intense hostility—do not satisfy *Griffin's* animus requirement.

Plaintiffs do not allege interference with voting at the polls or obstruction of voter registration. The Facts showed that Plaintiff Davis, the only Texan had voted before the October 30, 2020 incident. ROA.28537. Compare where race was a given reason for the defendant Lee's actions, *Paynes v. Lee*, 377 F.2d 61, 63–64 (5th Cir. 1967). In the case before the court, it is alleged that private political supporters followed a campaign bus on public highways and engaged in expressive conduct.

Whatever one thinks of that conduct, it is private political activity—not state action. Because Plaintiffs allege no governmental involvement, their 42 U.S.C. §1985(3) claim fails as a matter of law.

## CONCLUSION

Section 1985(3) was enacted to combat race-based conspiracies that denied equal protection—not to regulate private partisan conflict.

The Supreme Court requires discriminatory animus. *Griffin*, 403 U.S. at 102. It rejects political-class theories. *Carpenters*, 463 U.S. at 837. It warns against federalizing private political disruption. Id. at 836.

Plaintiffs allege none of what the statute requires and all of what the Supreme Court forbids. The judgement of the District Court based on the jury finding must be reversed.

20

SUBMITTED BY:
*S/Francisco Raul Canseco*
Francisco Raul Canseco
Attorney at Law
Attorney for Eliazar Cisneros
19 Jackson Court
San Antonio, TX 78230
frcanseco@gmail.com
210.901.4279

21

# CERTIFICATE OF SERVICE

I certify that on February 19, 2026E, the foregoing document was forwarded via electronic filing system CM/ECF as per Fed. R. App. P. 25C (2), on today's date to the following parties/counsel:

| |
|---|
| Samuel Hall of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| Robert Meyer of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| Zachary Dolling of Texas Civil Rights Project Austin, TX |
| Sarah Chen of Texas Civil Rights Project Austin, TX |
| Aaron Nathan of Willkie Farr & Gallagher, L.L.P. New York, NY |
| JoAnna Suriani of Protect Democracy Project, Incorporated Washington, DC |
| Benjamin Berwick of Protect Democracy Project, Incorporated Watertown, MA |
| Nina Oishi of Texas Civil Rights Project Austin, TX |
| Samuel Hall of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| Robert Meyer of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| Zachary Dolling of Texas Civil Rights Project Austin, TX |
| Sarah Chen of Texas Civil Rights Project Austin, TX |
| Aaron Nathan of Willkie Farr & Gallagher, L.L.P. New York, NY |
| JoAnna Suriani of Protect Democracy Project, Incorporated Washington, DC |
| Benjamin Berwick of Protect Democracy Project, Incorporated Watertown, MA |
| Nina Oishi of Texas Civil Rights Project Austin, TX |
| Samuel Hall of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| Robert Meyer of Willkie Farr & Gallagher, L.L.P. Washington, DC |
| Zachary Dolling of Texas Civil Rights Project Austin, TX |
| Sarah Chen of Texas Civil Rights Project Austin, TX |
| Aaron Nathan of Willkie Farr & Gallagher, L.L.P. New York, NY |
| JoAnna Suriani of Protect Democracy Project, Incorporated Washington, DC |
| Benjamin Berwick of Protect Democracy Project, Incorporated Watertown, MA |
| Nina Oishi of Texas Civil Rights Project Austin, TX |
| Ashley Honold of U.S. Department of Justice Washington, DC |

S/Francisco Raul Canseco

22

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 6313 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface Microsoft Office in 14pt Times Roman.

<u>S/Francisco Raul Canseco</u>

24