No. 25-50693
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

DAVIS V. CISNEROS
1:21-CV-00565-RP
United States District Court for the Western District of Texas.

————

WENDY DAVIS, DAVID GINS,

TIMOTHY HOLLOWAY,

Plaintiffs - Appellees

UNITED STATES OF AMERICA,

Intervenor - Appellee

ELIAZAR CISNEROS,

Defendant - Appellant

————

**REPLY BRIEF OF APPELLANT ELIAZAR CISNEROS**

————

Francisco Raul Canseco
Attorney at Law
19 Jackson Court
San Antonio, Tx 78230
210.901.4279
frcanseco@gmail.com
**Attorney for Eliazar Cisneros**

# TABLE OF CONTENTS

No. 25-50693 ......................................................................................1

*REPLY BRIEF OF APPELLANT ELIAZAR CISNEROS*...................................*1*

TABLE OF
AUTHORITIES…………………………………………….....................3

QUESTIONS PRESENTED.................................................................4

STATEMENT OF THE CASE ..............................................................4

STATEMENT OF FACTS ...................................................................5

STANDARD OF REVIEW...................................................................6

SUMMARY OF THE ARGUMENT ....................................................7

ARGUMENT ......................................................................................9

I. APPELLEES' TEXTUAL READING OF KUSH V. RUTLEDGE
MISAPPLIES SUPREME COURT PRECEDENT AND IGNORES
CONSTITUTIONAL LIMITING PRINCIPLES ................................................9

II. THE SUPPORT-OR-ADVOCACY CLAUSES DO NOT CREATE A
SUBSTANTIVE RIGHT TO ENGAGE IN POLITICAL ADVOCACY
ENFORCEABLE AGAINST PRIVATE ACTORS WITHOUT STATE
ACTION ..................................................................................................15

III. *PAYNES V. LEE* IS FACTUALLY AND LEGALLY DISTINGUISHABLE
AND DOES NOT SUPPORT APPELLEES' EXPANSIVE READING .........20

IV. THE JURY VERDICT CANNOT STAND BECAUSE PLAINTIFFS
FAILED TO PROVE THE ESSENTIAL ELEMENT OF CLASS-BASED
DISCRIMINATORY ANIMUS ...........................................................24

CONCLUSION ..................................................................................26

CERTIFICATE OF SERVICE ...........................................................27

CERTIFICATE OF COMPLIANCE ...................................................28

# TABLE OF AUTHORITIES

## CASES

*Carpenter,* 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983) ..........................................................................................................14, 15, 21

*Deubert v. Gulf Federal Sav. Bank,* 820 F.2d 754 (5th Cir.1987). ..........................13

*Griffin* ........................................................................................................11, 14, 21

*Griffin v. Breckenridge*..................................................................................................9

*Griffin v. Breckenridge,* 403 U.S. at 101, 91 S. Ct. 1790,................................................7

*Griffin v. Breckenridge,*403 U.S. at 101, 91 S. Ct. 1790,.............................................23

*Griffin* v.. *Breckenridge*, 403 U.S. at 101, 91 S. Ct. 1790................................................21

*Griffin,* .................................................................................................................15

*Griffin'* ....................................................................................................................9

*Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261 ..........................................12

*Kush v. Rutledg*.........................................................................................................10

*Kush v. Rutledge* ...............................................................................................7, 9, 10

*Kush v. Rutledge, 460 U.S. 719, 724 (1983)* ..........................................................10

*Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788.............................17

*Montano v. Orange Cnty., Tex.*120 F.3d at  848 ..........................................................7

*Newsome v. EEOC*, 301 F.3d 227 .............................................................................13

*Paynes v. Lee, 377 F.2d 61, 63-64 (5th Cir. 1967)* .................................................8, 20

Reeves v. Sanderson Plumbing Prods,530 U.S. 133 (2000) ......................................7

*Roe v. Abortion Abolition Society*, 811 F.2d 931, 933 (5th Cir.1987) .............16, 17

*Roe v. Abortion Abolition Society*, 811 F.2d 931, 933 (5th Cir.1987). ............16, 19

Tercero v. Tex. Southmost Coll. Dist, 989 F. 3d 291 ................................................7

*United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983) 13, 19, 25

*United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983). ...........23

*Young v. Isola*, 708 Fed. Appx.152 ........................................................................12

## STATUTES

§ 1985(2), ...............................................................................................................10

§ 1985(3) ..........................................................................................................passim

§ 1985(3), ...............................................................................................................12

§ 1985(3). ...........................................................................................................13, 20

42 U.S.C. § 1985(3)......................................................................................................3

## QUESTIONS PRESENTED

1. Whether 42 U.S.C. § 1985(3) requires proof of race-based or protected class discriminatory animus as an essential element, or whether the District Court erred in holding that partisan political hostility suffices to establish liability under the statute.

2. Whether the support-or-advocacy clauses of 42 U.S.C. § 1985(3) can reach private interference with political campaign activities absent state action, or whether such an interpretation improperly federalizes partisan political disputes and exceeds constitutional limits.

## STATEMENT OF THE CASE

This appeal arises from a jury verdict finding Defendant-Appellant, Eliazar Cisneros liable under 42 U.S.C. § 1985(3) for conspiracy based on his participation in a political demonstration Named "The Trump Train" alongside a Biden-Harris campaign bus on October 30, 2020.

Plaintiffs-Appellees filed their complaint on June 24, 2021, asserting claims under § 1985(3) and state law. Appellant moved to dismiss, arguing, among other reasons, that § 1985(3) requires allegations of race-based or protected class animus and that claims based on interference with First Amendment rights require state action. The District Court denied the motion to dismiss on March 23, 2022, and subsequently denied motions for reconsideration and certification for interlocutory appeal.

After Plaintiffs-Appellees amended their complaint, Defendants, (including Defendant-Appellant) again moved to dismiss, and the District Court again denied the motion on August 3, 2023 [ROA 2711-2719]. The District Court also denied Defendants' motions for summary judgment in a sixty-four-page opinion issued on October 13, 2024. [ROA 25472-25535].

A jury trial was held in September 2024. On September 23, 2024, the jury found Defendant-Appellant liable under §1985(3) and awarded Plaintiff -Appellee Timothy Holloway $10,000 in compensatory damages and $30,000 in punitive damages. All other defendants were found not liable, [ROA 26941-26946].

Defendant-Appellant filed a motion for Judgment on Partial Jury Findings or for a New Trial [ROA.26951-26962] which the District Court denied on August 1, 2025[ROA.27322-27340]. The District Court entered final judgment on August 1, 2025, [ROA.27341-27343] and Defendant-Appellant filed a timely notice of appeal on August 21, 2025, [ROA.27426].

**STATEMENT OF FACTS**

Because the facts were fully presented in Defendant-Appellant's opening brief, Defendant-Appellant incorporates those facts by reference and addresses here only facts that Appellees mischaracterized in their response brief.

First, Plaintiffs-Appellees characterize the October 30, 2020 incident as involving Defendant-Appellant and others who chased, surrounded, and harassed the campaign bus. This characterization misrepresents the nature of the conduct. Defendant-Appellant and other Trump supporters engaged in a political demonstration on public highways, displaying American flags and Trump for President flags, honking horns and showing their support and advocacy for the

candidate of their choicer, alongside a campaign bus wrapped with Biden-Harris campaign slogans. This was expressive political conduct protected by the First Amendment, not criminal harassment or intimidation.

Second, Plaintiffs-Appellees emphasize Defendant-Appellant's unrelated pre-incident conduct and statements as well as post-incident statements as evidence of a conspiracy to prevent campaign activities. However, these statements reflect political hyperbole and satisfaction with the success of a political demonstration, not evidence of a conspiracy motivated by class-based discriminatory animus. Political opponents frequently engage in heated rhetoric about their successes in disrupting opposing campaigns, but such rhetoric does not transform political opposition into a federal civil rights violation.

Third, Plaintiffs-Appellees rely heavily on the spoliation of text messages and the Fifth Amendment invocation by non-party Jason Peña-Ahuyon to infer a conspiracy. However, the jury instruction on spoliation improperly shifted the burden of proof to Defendant-Appellant, and the use of Peña-Ahuyon's deposition testimony despite his Fifth Amendment invocation violated Defendant-Appellant's due process rights. These evidentiary issues, combined with the lack of proof of class-based animus, render the verdict legally insufficient. See Order [ROA 21767-21769].

Most importantly, the record contains no evidence of race-based or protected class discriminatory animus. Plaintiffs-Appellees alleged only partisan political hostility arising from opposing campaign activities. Under controlling Supreme Court and Fifth Circuit precedent, such partisan hostility cannot support a § 1985(3) claim.

**STANDARD OF REVIEW**

This Court reviews the District Court's denial of a motion for judgment as a matter of law under Judgment as a Matter of Law in a Jury Trial; Related Motion for a New Trial; Conditional Ruling de novo, applying the same standard applied by the District Court. *Tercero v. Tex. Southmost Coll. Dist.*The standard for granting judgment as a matter of law mirrors the standard for summary judgment. *Reeves v. Sanderson Plumbing Prods.*530 U.S. 133 (2000).

When reviewing the denial of a motion for judgment as a matter of law, the evidence must be viewed in the light most favorable to the nonmovant. *Montano v. Orange Cnty., Tex.* However, questions of statutory interpretation and the required legal elements of a cause of action are reviewed de novo. *Tercero v. Tex. Southmost Coll. Dist. 989 F.3d 291.*

Accordingly, this Court reviews de novo whether § 1985(3) requires proof of race-based or protected class discriminatory animus as an essential element, and whether claims based on alleged interference with First Amendment rights require state action.

**SUMMARY OF THE ARGUMENT**

The District Court committed reversible error by allowing Plaintiffs-Appellees' § 1985(3) claim to proceed to a jury without requiring proof of the essential element of class-based discriminatory animus. The Supreme Court established in *Griffin v. Breckenridge,* 403 U.S. at 101, 91 S. Ct. 1790, that § 1985(3) requires proof of racial or otherwise class-based, invidiously discriminatory animus to prevent the statute from becoming a general federal tort law. This requirement is not merely textual but constitutionally necessary to avoid federalizing ordinary partisan disputes and exceeding Congress's enumerated powers.

Plaintiffs-Appellees' reliance on *Kush v. Rutledge* is misplaced. While *Kush* held that racial animus is not necessary for certain § 1985(2) claims, it did not eliminate the constitutional necessity of the animus requirement for § 1985(3) claims that would otherwise federalize partisan political disputes. The animus requirement serves as a limiting principle that prevents § 1985(3) from reaching all tortious, conspiratorial interferences with the rights of others.

The District Court also erred in holding that § 1985(3) can reach private interference with political campaign activities without state action. The support-or-advocacy clauses protect the integrity of federal elections and the voting process, not generalized political advocacy. Campaign speech and advocacy are First Amendment activities that, by constitutional design, constrain only governmental action. Section 1985(3) cannot be stretched to reach private interference with First Amendment activities absent state action.

Plaintiffs-Appellees' reliance on *Paynes v. Lee, 377 F.2d 61, 63–64 (5th Cir. 1967)* is unavailing. *Paynes* involved racially motivated voter intimidation directly tied to voter registration, not private political expression on public highways. The presence of racial terror and voter intimidation in *Paynes* supplied the class-based discriminatory animus that § 1985(3) requires. The present case lacks any such animus.

Finally, Plaintiffs-Appellees' interpretation would improperly federalize partisan political disputes, displace state tort law, and chill political speech. The Tenth Amendment reserves to the states the power to regulate political activity within their borders. Allowing private citizens to be held liable under federal law for engaging in political advocacy that interferes with an opposing campaign would create a dangerous precedent that threatens core First Amendment values.

For these reasons, the judgment must be reversed.

**ARGUMENT**

**I. APPELLEES' TEXTUAL READING OF KUSH V. RUTLEDGE MISAPPLIES SUPREME COURT PRECEDENT AND IGNORES CONSTITUTIONAL LIMITING PRINCIPLES**

Appellees argue that *Kush v. Rutledge* establishes a simple textual test: if a statutory provision contains language requiring intent to deny equal protection, then animus is required; if not, then animus is not required. This reading fundamentally misunderstands the relationship between *Kush* and *Griffin v. Breckenridge,* and it ignores the constitutional necessity of the animus requirement.

**A. *Griffin* Establishes the Animus Requirement as a Constitutional Necessity, Not Merely a Textual Matter**

The Supreme Court in *Griffin* held that the language in § 1985(3) requiring intent to deprive of equal protection or equal privileges and immunities means there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. 403 U.S. at 101, 91 S. Ct. 1790. This requirement exists to avoid the constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law. 403 U.S. at 101, 91 S. Ct. 1790.

*Griffin's* animus requirement is not merely a matter of statutory interpretation; it is a constitutional necessity. The Court explained that without this requirement, § 1985(3) would apply to all tortious, conspiratorial interferences with the rights of others, which would exceed Congress's constitutional powers.

403 U.S. at 101, 91 S. Ct. 1790. The animus requirement serves as the limiting principle that keeps § 1985(3) within constitutional bounds.

Plaintiffs-Appellees' clause-by-clause textual approach, divorced from this constitutional limiting principle, would permit federal courts to entertain claims based on partisan hostility. This is precisely the result that *Griffin* forbade. If § 1985(3) can reach any conspiracy to interfere with political advocacy, regardless of the conspirators' motivation, then the statute becomes exactly what *Griffin* warned against: a general federal tort law that federalizes ordinary partisan disputes.

**B. *Kush* Does Not Eliminate the Animus Requirement for Claims That Would Federalize Partisan Disputes**

Plaintiffs-Appellees rely heavily on *Kush v. Rutledge* to argue that the animus requirement depends solely on whether the statutory text contains language requiring intent to deny equal protection. *Kush v. Rutledge* However, this reading of *Kush* is incomplete and fails to account for the constitutional concerns that motivated *Griffin's* animus requirement.

*Kush* addressed § 1985(2), not § 1985(3), and held that racial animus is not necessary to establish a violation of § 1985(2)'s first clause. In *Kush v. Rutledge, 460 U.S. 719, 724 (1983)* the Court reasoned that the first clause of § 1985(2) protects federal officers, federal courts, and federal elections, and that Congress's power to protect these federal interests does not depend on proof of racial animus. *Kush v. Rutledg.* However, *Kush's* holding regarding § 1985(2) does not logically extend to eliminate the animus requirement for § 1985(3) claims that would federalize partisan disputes. The two subsections serve different purposes and protect different rights. Section 1985(2) protects the administration of justice in federal courts and the performance of duties by federal officers. Section 1985(3)

protects against conspiracies to deprive persons of equal protection or equal privileges and immunities.

More importantly, even if *Kush's* textual approach were applicable to § 1985(3), it cannot override *Griffin's* constitutional avoidance principle. *Griffin* established that the animus requirement is necessary to prevent § 1985(3) from becoming a general federal tort law. 403 U.S. at 101, 91 S. Ct. 1790. This constitutional concern applies with equal force to the support-or-advocacy clauses. Without the animus requirement, any private party who interferes with another's campaign activities through counter-speech, protest, or expressive conduct could face federal liability. This would federalize ordinary partisan conflict and convert political disputes into federal civil rights violations.

### C. The Absence of "Equal Protection" Language Does Not Eliminate the Constitutional Necessity of the Animus Requirement

Plaintiffs-Appellees argue that because the support-or-advocacy clauses do not contain the phrase equal protection of the laws or equal privileges and immunities, the animus requirement does not apply. This argument fails for two reasons.

First, the animus requirement is not solely a matter of statutory text; it is a constitutional necessity. *Griffin* explained that the animus requirement is necessary to avoid constitutional problems that would arise if § 1985(3) were interpreted as a general federal tort law. 403 U.S. at 101, 91 S. Ct. 1790. This constitutional concern applies regardless of whether a particular clause contains the phrase equal protection.

Second, Plaintiffs-Appellees' interpretation creates an absurd result: the equal protection clauses (which explicitly reference equal protection) would require animus, but the support-or-advocacy clauses (which do not) would not. This

inverts the logical relationship between textual specificity and statutory requirements. It would be strange for Congress to require animus for the equal protection clauses but not for the support-or-advocacy clauses, especially given that both provisions address similar concerns about private conspiracies.

The better reading is that the animus requirement applies to all § 1985(3) claims as a matter of constitutional necessity, regardless of whether a particular clause contains the phrase equal protection. This reading is consistent with *Griffin's* constitutional avoidance principle and with Fifth Circuit precedent uniformly requiring animus for § 1985(3) claims.

### D. Fifth Circuit Precedent Uniformly Requires Animus for Section 1985(3) Claims

The Fifth Circuit has repeatedly and consistently held that animus is an essential element of § 1985(3) claims. To establish a claim under § 1985(3), a plaintiff must show that a racial or class-based discriminatory animus lay behind the conspiracy. *Young v. Isola,* 708 Fed. Appx.152.

In *Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, the Fifth Circuit affirmed summary judgment where the plaintiff failed to present any proof that the defendant conspired based on any gender-based discriminatory animus. *Horaist v. Doctor's Hosp. of Opelousas*. The court made clear that the absence of discriminatory animus is fatal to a § 1985(3) claim, regardless of whether a conspiracy to interfere with a protected activity might otherwise be alleged.

Similarly, in *Deubert v. Gulf Federal Savings Bank*, the Fifth Circuit held that to state a claim under § 1985(3), plaintiffs must allege that they are victims of a

race-based conspiracy. In *Deubert v. Gulf Federal Sav. Ban*k the court noted that this holding was grounded in *Griffin's* statement that some racial or perhaps otherwise class-based, invidiously discriminatory animus is a prerequisite to a § 1985(3) action. *Deubert v. Gulf Federal Sav. Bank,* 820 F.2d 754 (5th Cir.1987).

In *Newsome v. EEOC*, the Fifth Circuit held that to state a § 1985(3) claim, the plaintiff must allege that the conspirators were motivated by her race. *Newsome v. EEOC*, 301 F.3d 227. The court found that vague allegations of conspiracy without any allegation of discriminatory animus were insufficient to state a claim.

These decisions establish that Fifth Circuit precedent treats animus as an essential element of § 1985(3) civil liability. Plaintiffs-Appellees' interpretation would overturn this binding precedent. The absence of animus is not a matter of degree or emphasis; it is a fatal defect that precludes recovery.

**E.     Carpenters Confirms That Section 1985(3) Requires Class-Based Discriminatory Animus and Rejects Political-Class Theories**

In *United Brotherhood of Carpenters v. Scott*, the Supreme Court reinforced that § 1985(3) requires a class-based, invidious discrimination as the central concern of Congress in enacting the statute. *United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983). The Court further held that class-based, invidious discrimination must be evaluated by focusing on animus or motivation. *United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)

Critically, the *Carpenters* Court rejected the argument that economic groups or political associations constitute protected classes under § 1985(3). *United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott,* 463 U.S.

825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983). The Court stated that even if § 1985(3) must be construed to reach conspiracies aimed at any class or organization on account of its political views or activities, it found no support for interpreting the statute to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities. *United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott,* 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)

Plaintiffs-Appellees' theory-that partisan hostility arising from opposing campaign activity suffices to establish a § 1985(3) violation-effectively seeks to recognize a political class and to permit federal liability based on political animus. This directly contradicts *Carpenters*. The statute protects against conspiracies motivated by invidious discrimination based on immutable characteristics or fundamental rights, not against ordinary partisan opposition or campaign-related disputes.

Plaintiffs-Appellees' reading would transform § 1985(3) into precisely the general federal tort law that both *Griffin* and *Carpenters* forbade. Under their theory, any private party who interferes with another's campaign activities through counter-speech, protest, or expressive conduct could face federal liability based solely on partisan hostility. This would federalize ordinary partisan conflict and campaign disruption, converting what are fundamentally disputes over political expression into federal civil rights violations.

**F. Application to the Facts: Partisan Hostility Without Protected-Class Animus Cannot Support a Section 1985(3) Verdict**

Applying these principles to the facts of this case, Plaintiffs-Appellees alleged partisan hostility arising from opposing campaign activity. Plaintiffs-Appellees did not allege, and the record contains no evidence of, race-based discriminatory animus. Plaintiffs-Appellees did not allege, and the record contains no evidence of, animus based on any protected class characteristic.

The jury was instructed to find liability if it found that Defendant-Appellant conspired to prevent Plaintiffs from giving support or advocacy in favor of the Biden-Harris campaign. However, the jury was not instructed that it must find class-based discriminatory animus. This was legal error.

Under *Griffin, Carpenters*, and Fifth Circuit precedent, a § 1985(3) claim based solely on partisan opposition to campaign activity cannot survive as a matter of law. The jury verdict cannot stand because Plaintiffs-Appellees failed to prove an essential element of their cause of action: class-based, invidiously discriminatory animus. The District Court erred in submitting this claim to the jury without requiring proof of animus, and the verdict must be reversed.

## II. THE SUPPORT-OR-ADVOCACY CLAUSES DO NOT CREATE A SUBSTANTIVE RIGHT TO ENGAGE IN POLITICAL ADVOCACY ENFORCEABLE AGAINST PRIVATE ACTORS WITHOUT STATE ACTION

Plaintiffs-Appellees argue that the support-or-advocacy clauses of § 1985(3) create an independent substantive right to engage in support or advocacy in federal elections, enforceable against private actors without state action. This interpretation is contrary to the statute's text, structure, and purpose, and it would improperly federalize partisan political disputes.

**A. Section 1985(3) Does Not Supply Substantive Rights; It Provides a Remedy for Deprivation of Rights Found Elsewhere**

The Fifth Circuit has held that § 1985(3) does not itself provide any substantive rights. *Roe v. Abortion Abolition Society*, 811 F.2d 931, 933 (5th Cir.1987). Instead, the rights, privileges, and immunities protected by § 1985(3) must be found elsewhere. *Roe v. Abortion Abolition Society*, 811 F.2d 931, 933 (5th Cir.1987). Section 1985(3) does not protect individuals against private efforts to encroach on constitutional shields, such as the First Amendment, that protect only against official conduct. *Roe v. Abortion Abolition Society*, 811 F.2d 931, 933 (5th Cir.1987)

This principle applies with full force to the support-or-advocacy clauses. The statute prohibits conspiracies to prevent citizens from giving support or advocacy in favor of federal candidates, but it does not create a freestanding right to engage in such support or advocacy free from private interference. Rather, the statute provides a remedy for conspiracies that deprive citizens of rights that are protected against private infringement.

Plaintiffs-Appellees' theory rests on the premise that the support-or-advocacy clauses create a freestanding right to campaign without private interference. This construction fails because it attempts to use § 1985(3) as a vehicle to federalize First Amendment campaign speech-a constitutional protection that, by its nature, constrains only governmental action. The statute cannot be stretched to provide a federal tort remedy for private parties who allegedly interfere with campaign activities through their own speech and expressive conduct.

**B. Campaign Speech and Advocacy Are First Amendment Activities That Require State Action**

Campaign speech and advocacy are quintessentially First Amendment activities. The First Amendment protects political speech and assembly, but it restricts only state action, not private conduct. When Plaintiffs-Appellees frame their claim as one arising under § 1985(3)'s support-or-advocacy clauses, they are attempting to repackage a First Amendment claim in civil rights language.

The Fifth Circuit has repeatedly rejected such attempts. In *Mississippi Women's Medical Clinic v. McMillan*, the court held that § 1985(3) does not protect individuals against private efforts to encroach on constitutional shields, such as the First Amendment, that protect only against official conduct. *Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788. The court emphasized that § 1985(3) does not itself provide substantive rights; instead, the rights it protects must be found elsewhere.

Similarly, in *Roe v. Abortion Abolition Society*, the Fifth Circuit held that § 1985(3) does not protect individuals against private efforts to encroach on First Amendment rights. *Roe v. Abortion Abolition Society*, 811 F.2d 931, 933 (5th Cir.1987). The court explained that the rights, privileges, and immunities protected by § 1985(3) must be found elsewhere, and that § 1985(3) does not protect against private interference with constitutional rights that protect only against official conduct.

Plaintiffs-Appellees' theory would require federal courts to police private political speech and campaign activities, a role fundamentally at odds with First Amendment principles and the state-action doctrine. A private party's expressive conduct-displaying flags, driving alongside a campaign bus-cannot constitute a §

1985(3) violation merely because it allegedly interferes with another's campaign activities.

### C. The Support-or-Advocacy Clauses Protect the Integrity of Federal Elections and the Voting Process, Not Generalized Political Advocacy

The statutory text of § 1985(3) addresses conspiracies to prevent citizens from giving support or advocacy toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress. § 1985. Conspiracy to interfere with civil rights Plaintiffs-Appellees argue this language creates a broad right to campaign without private interference.

This reading ignores the statutory context. The support-or-advocacy clauses appear in a statute designed to protect the integrity of federal elections and the voting process itself. The statute addresses conspiracies to prevent citizens lawfully entitled to vote from voting and conspiracies to injure citizens on account of such support or advocacy. § 1985. Conspiracy to interfere with civil rights.

The historical context-Reconstruction-era protection against violence and intimidation aimed at disrupting the electoral process-demonstrates that the statute was concerned with protecting the mechanics of voting and election administration, not with federalizing all campaign-related conduct. The phrase support or advocacy in the context of the 1871 Act was understood to mean advocacy related to voting and elections, not political speech generally.

Critically, there are no allegations in this case that Defendant-Appellant was connected to governmental authority, election administration, polling places, voter registration, ballot access, or any similar official process. The events at issue involved private citizens driving on public highways with flags. This conduct,

however offensive to Plaintiffs-Appellees, does not implicate the federal election integrity concerns that § 1985(3) was designed to address.

### D. Appellees' Interpretation Would Improperly Federalize Partisan Political Disputes and Violate Constitutional Principles

Plaintiffs-Appellees' expansive reading of § 1985(3) would constitute a significant federalization of conduct traditionally governed by state law. Traffic enforcement on public highways, regulation of political expression in public spaces, and remedies for business disruption have long been matters of state and local concern. Plaintiffs-Appellees' theory would convert routine partisan political conduct into a federal civil rights violation, displacing state tort law, state traffic regulations, and state common law remedies.

The Supreme Court has emphasized that § 1985(3) does not itself provide any substantive rights and that the rights, privileges, and immunities protected by § 1985(3) must be found elsewhere. *United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott,* 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983). Rights protected only against state interference-including First Amendment rights-cannot form the basis of a § 1985(3) claim absent proof of state involvement in the conspiracy. *Roe v. Abortion Abolition Society*, 811 F.2d 931, 933 (5th Cir.1987).

Furthermore, allowing private citizens to be held liable under § 1985(3) for engaging in political advocacy that interferes with an opposing campaign would create a chilling effect on political speech and assembly. Citizens would be deterred from engaging in lawful political speech and assembly for fear of federal liability. This outcome is fundamentally at odds with First Amendment values and the constitutional structure of federalism.

The Tenth Amendment reserves to the states the power to regulate political activity within their borders. Plaintiffs-Appellees' interpretation would improperly federalize political disputes that are traditionally regulated by the states and would create a federal cause of action for political harassment that has no basis in the Constitution.

## III. *PAYNES V. LEE* IS FACTUALLY AND LEGALLY DISTINGUISHABLE AND DOES NOT SUPPORT APPELLEES' EXPANSIVE READING

Plaintiffs-Appellees rely heavily on *Paynes v. Lee* to argue that the support-or-advocacy clauses create a remedy for interference by private individuals without requiring state action or animus. This reliance is misplaced because *Paynes* is factually and legally distinguishable from the present case.

### A. *Paynes* Involved Racially Motivated Voter Intimidation, Not Private Political Expression

*Paynes* involved a specific and narrow factual context: racially motivated voter intimidation directly tied to voter registration and voting activities. The case arose from conduct designed to prevent African American citizens from exercising their fundamental right to vote through racial terror and intimidation. That context-involving both explicit racial animus and interference with a constitutionally protected voting right-supplied the limiting principle that made the conspiracy actionable under § 1985(3).

The present case presents an entirely different scenario. Here, private citizens are engaged in political expression on a public highway by displaying flags, honking horns alongside a campaign bus. No allegation of state involvement exists. Critically, no allegation of race or class-based discriminatory animus has

been made. The cancellation of events by Plaintiffs-Appellees, while perhaps politically consequential, does not implicate the core concerns that animated § 1985(3) protection against conspiracies motivated by invidious discrimination to deprive persons of rights protected against private infringement.

*Paynes* cannot reasonably be read as endorsing a federal tort remedy for campaign disruption between private political opponents. To do so would require stripping away the essential factual predicates-racial terror, voter intimidation, and explicit class-based animus-that made Paynes a proper § 1985(3) case in the first place.

### B. *Paynes* Is Consistent With, Not Contrary to, *Griffin* and *Carpenters*

The Supreme Court's framework in *Griffin* and *Carpenters* establishes that § 1985(3) requires proof of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. *Griffin* v.. *Breckenridge*, 403 U.S. at 101, 91 S. Ct. 1790. This requirement exists precisely to prevent § 1985(3) from becoming a general federal tort law applicable to all tortious, conspiratorial interferences with the rights of others.

*Paynes*, properly understood, exemplifies rather than contradicts this limiting principle. The presence of racial terror and voter intimidation in *Paynes* supplied the class-based discriminatory animus that § 1985(3) demands. The conspiracy in Paynes was actionable because it targeted a protected class (African American voters) with the specific intent to deprive them of equal protection through racial violence and intimidation. The case thus operated within the boundaries established by *Griffin* and *Carpenters*, not outside them.

In contrast, the present case lacks any allegation of class-based discriminatory animus. The conduct at issue-political flag displays on a public highway-does not target any protected class. It does not arise from racial, ethnic, religious, or other invidiously discriminatory motivation. Plaintiffs-Appellees cannot point to any facts suggesting that the convoy participants acted because of animus toward Plaintiffs-Appellees based on membership in a protected class. Without this essential element, the case falls outside the scope of § 1985(3) as properly construed.

## C. Reconstruction-Era Cases Cannot Expand Modern Civil Liability for Routine Partisan Conflict

Plaintiffs-Appellees invoke Reconstruction-era cases to argue that the support-or-advocacy clauses historically covered broad political advocacy. This argument presents a temporal and doctrinal problem. Those cases involved criminal prosecutions under now-repealed statutory provisions in a context of widespread organized violence, racial terror, and the systematic suppression of newly freed persons' rights. That historical moment-when the Ku Klux Klan and similar organizations operated wholly outside the law to prevent the exercise of fundamental rights-bears no meaningful resemblance to private political expression on a public highway in the modern era.

The legislative focus during Reconstruction had clearly shifted from hostile statutes to the activities of groups like the Ku Klux Klan, operating wholly outside the law. Congress enacted § 1985(3) to address organized conspiracies of racial terror, not to create a federal cause of action for every instance of political opposition or campaign disruption. To extrapolate from criminal prosecutions in that extraordinary historical context to civil liability for routine partisan conflict would represent an unjustifiable expansion of the statute's scope.

Moreover, the fact that criminal prosecutions occurred under now-repealed provisions does not establish that modern civil liability should extend to conduct bearing no resemblance to the violence and racial animus those provisions addressed. The historical record cannot be mined selectively to support an interpretation that would transform § 1985(3) into a general federal tort for political disputes.

**D. The District Court's Reliance on Legislative History Cannot Override Constitutional Limiting Principles**

Plaintiffs-Appellees provide extensive legislative history regarding the drafting and passage of the 1871 Act, arguing that the support-or-advocacy clauses were added in the Senate without explicit class-based animus language, suggesting that Congress intentionally omitted this requirement. However, this argument fails for several reasons.

First, the legislative history shows that the support-or-advocacy clauses were added without extensive debate, suggesting that Congress understood them to be a narrow provision addressing voting-related interference, not a broad protection for political advocacy. The lack of debate about the animus requirement does not mean Congress intended to omit it. Rather, Congress may have assumed that the animus requirement would apply to all § 1985(3) provisions as a matter of constitutional necessity.

Second, Plaintiffs-Appellees' reading of the legislative history is incomplete and does not account for the constitutional concerns that motivated the animus requirement. *Griffin* and *Carpenters* establish that the animus requirement is a constitutional necessity to avoid transforming § 1985(3) into a general federal tort law. *Griffin v. Breckenridge,* 403 U.S. at 101, 91 S. Ct. 1790, *United Brotherhood*

*of Carpenters and Joinders of America, Local 610 v. Scott,* 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983). This principle applies equally to the support-or-advocacy clauses, regardless of whether Congress explicitly stated the requirement in the statutory text.

Third, the fact that the support-or-advocacy clauses were added separately from the equal protection clauses does not mean they have different constitutional groundings. Both provisions are part of the same statute and address similar concerns about private conspiracies. The constitutional avoidance principle that motivated the animus requirement in *Griffin* applies with equal force to all provisions of § 1985(3).

## IV. THE JURY VERDICT CANNOT STAND BECAUSE PLAINTIFFS FAILED TO PROVE THE ESSENTIAL ELEMENT OF CLASS-BASED DISCRIMINATORY ANIMUS

Even viewing the evidence in the light most favorable to Plaintiffs-Appellees, the jury verdict cannot stand as a matter of law because Plaintiffs-Appellees failed to prove the essential element of class-based, invidiously discriminatory animus.

### A. The Record Contains No Evidence of Race-Based or Protected Class Animus

The record in this case contains no evidence that Defendant-Appellant or any other participant in the Trump Train was motivated by racial animus or animus based on any other protected class characteristic. Plaintiffs-Appellees alleged only that Defendant-Appellant and others opposed the Biden-Harris campaign and sought to disrupt campaign activities. This is partisan political hostility, not class-based discriminatory animus.

Defendant-Appellant's statements after the incident reflect political hyperbole and satisfaction with the success of a political demonstration. Political opponents frequently engage in heated rhetoric about their successes in disrupting opposing campaigns, but such rhetoric does not transform political opposition into evidence of class-based animus. Without evidence that Defendant-Appellant was motivated by animus toward Plaintiffs-Appellees based on their membership in a protected class, the § 1985(3) claim fails as a matter of law.

**B. Partisan Political Hostility Is Not Class-Based Discriminatory Animus**

The Supreme Court in Carpenters rejected the argument that economic groups or political associations constitute protected classes under § 1985(3). United Brotherhood of Carpenters and Joinders of America, Local 610 v.

*Figure 1*

Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)The Court found no support for interpreting the statute to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities. United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)

By extension, partisan political hostility-opposition to a political campaign based on disagreement with the candidate's views or party affiliation-is not class-based discriminatory animus. Political affiliation is not an immutable characteristic, and political opposition is not invidious discrimination. If § 1985(3) could reach conspiracies motivated by partisan political hostility, then every instance of campaign disruption, counter-protest, or political opposition could give rise to

federal liability. This would transform § 1985(3) into precisely the general federal tort law that Griffin and Carpenters forbade.

## C. The Evidentiary Issues Further Undermine the Verdict's Reliability

The jury verdict is also undermined by significant evidentiary issues. Defendant-Appellant intentionally deleted text messages relevant to the case, and the District Court gave a jury instruction allowing the jury to presume that the deleted messages were unfavorable to Defendant-Appellant. This instruction effectively shifted the burden of proof to Defendant-Appellant, requiring him to prove that the deleted messages would not have established liability. This violates the principle that the burden of proof rests on the party bringing the claim.

Additionally, non-party Jason Peña-Ahuyon invoked the Fifth Amendment in response to questions about his communications with Defendant-Appellant, yet the jury was allowed to hear his deposition testimony. The jury was permitted to infer from Peña-Ahuyon's Fifth Amendment invocation that he and Defendant-Appellant had agreed to block the bus, but Defendant-Appellant was not allowed to cross-examine Peña-Ahuyon about this inference nor testify to the contents oc communications, nor argue to the jury. This raises serious due process concerns.

These evidentiary issues, combined with the lack of proof of class-based animus, render the verdict legally insufficient. The District Court should have granted Defendant-Appellant 's motion for judgment as a matter of law

## CONCLUSION

For the foregoing reasons, the Defendant-Appellant, Eliazar Cisneros respectfully requests that this Court reverse the judgment of the District Court and

enter judgment in favor of Defendant-Appellant, or in the alternative, vacate the judgment and remand for a new trial.

Respectfully submitted,

*/s/ Francisco Raul Canseco*

Francisco Raul Canseco
Attorney at Law
Texas Bar No. 03759600
19 Jackson Court
San Antonio, Texas 78230
Telephone: (210) 901-4279
Email: frcanseco@gmail.com

**Attorney for Appellant Eliazar Cisneros**

Dated: May12, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on 12th day of May 2026, a true and correct copy of the foregoing REPLY BRIEF OF APPELLANT ELIAZAR CISNEROS was served via electronic filing with the Clerk of Court and all registered ECF users in accordance with Filing and Service.

I further certify that I have served a copy of the foregoing document via electronic mail to the following counsel of record:

Samuel Hall
Robert Meyer
Aaron E. Nathan
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
Email: shall@willkie.com

Zachary Dolling
Sarah Xiyi Chen
Nina Lea Oishi
Texas Civil Rights Project
P.O. Box 17757
Austin, Texas 78760
Telephone: (512) 474-5073

JoAnna Barbara Suriani
Benjamin L. Berwick
Protect Democracy Project
2020 Pennsylvania Ave. NW, # 163
Washington, D.C. 20006
Telephone: (202) 579-4582

Ashley Honold
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 514-2000

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 12, 2026

*/s/ Francisco Raul Canseco*
Francisco Raul Canseco

**CERTIFICATE OF COMPLIANCE**

This Reply Brief of Defendant-Appellant Eliazar Cisneros complies with the type-volume limit of Form of Briefs, Appendices, and Other Papers because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.1, this document contains 6443 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface (Microsoft Word in 14-point Times Roman).

Executed on May 12, 2026

***/s/ Francisco Raul Canseco***
Francisco Raul Canseco
Attorney for Appellant Eliazar Cisneros</